

CHRISTOPHER ASHWORTH (SBN 54889)
SILICON VALLEY LAW GROUP
A Law Corporation
25 Metro Drive, Suite 600
San Jose, CA 95110
Telephone: (408) 573-5700
Facsimile: (408) 573-5701
Email: ca@svlg.com

E-filing

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO)

MEJ

CV 10 1466

| | |
|---|---|
| PP&M TOWING & RECOVERY, INC., a California Corporation<br><br>Plaintiff,<br><br>v.<br><br>THE CITY AND COUNTY OF SAN FRANCISCO, CALIFORNIA, a subdivision of the State of California; and GEORGE GASCON, in his capacity as the Chief of Police of the City of San Francisco, California,; and DOES 1 THROUGH 20,<br><br>Defendants. | CASE NO.<br><br>POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER AND FOR AN ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION<br><br>DATE:  April 7, 2010<br>TIME:  TBA<br>CTRM:  TBA |

POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER
10306554

1  Plaintiff PP&M TOWING & RECOVERY, INC. [Applicant or Plaintiff] submits its
2  separate memorandum of points and authorities as follows:

3  **1. Introduction.** This application is necessitated by virtue of certain unlawful conduct
4  of the defendants, George Gascón [Gascón] the Chief of Police of the defendant City of San
5  Francisco [City]. The unlawful conduct is the imposition of a municipal scheme of economic
6  regulation upon Petitioner which has been totally preempted by federal statute.

7  **2. Background facts Contained in the Complaint.**

8  A. Plaintiff is California Corporation in good standing. Plaintiff conducts
9  a motor carrier business, styled "P&S Towing". Plaintiff conducts a for-hire motor carrier
10 business, operating in intrastate and interstate commerce. It transports property for hire by motor
11 vehicle. Plaintiff's business predominantly (but not exclusively) operates in the California
12 Counties of San Francisco, San Mateo, Santa Clara, Santa Cruz, Marin, Alameda and Contra
13 Costa. The area of Plaintiff's principal operations comprises the seven counties just mentioned
14 and approximately one hundred fifty incorporated cities located in those counties. Plaintiff's
15 principal place of business is in San Francisco, California. Plaintiff domiciles its tow trucks in
16 San Francisco, San Bruno and Oakland, California. Additionally, Plaintiff operates in true
17 interstate commerce transporting towed vehicles between California and points in other states.

18 B. Defendant City of San Francisco, California [the City] is a political
19 subdivision of the State of California, and Defendant George Gascón [Gascón] is the Chief of
20 Police of the City of San Francisco. He is sued herein in his official capacity as the Chief of
21 Police of the City.

22 C. For more than thirteen years, the City has purported to regulate entry into the
23 tow truck ["tow car"] business. Its current version of tow car regulation is embraced in Article
24 30.1, sections 3050 *et seq.* of the City's Municipal Code. A true copy of the relevant Code
25 sections are attached to the complaint as Exhibit "A". As material here, Gascón is empowered
26 by the Code to issue or withhold licenses to operate a tow car business. He is likewise
27 empowered to revoke or suspend such licenses. *Nota bene*: The constitutional vice of the
28 regulatory scheme involved her is that it (a) purports to deny persons the right to carry goods for

POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER
10306554                                                2

hire (a licence scheme), and (b) minutely regulates conduct "related to a price, route or service of any *motor carrier* ... with respect to the transportation of property."

**3. Federal Preemption of the Motor Carrier Business.** Effective January 1, 1995, Congress enacted the Federal Aviation Administration Authorization Act. [FAAA Act]. In pertinent part, that Act (now re-codified as 49 U.S.C. §14501(c)(1)) declares: "A State, political subdivision of a State, or political authority of two or more States *may not enact or enforce* a law, regulation, or other provision having the force and effect of law related to a price, route or service of any *motor carrier* ... with respect to the transportation of property." The FAAA Act was and is broadly understood to obliterate State and municipal regulation of entry into the business of transporting property for hire by motor vehicle.

The pertinent language of the FAAA Act was based upon identical language contained in the Airline Deregulation Act of 1978 [ADA], enacted nearly two decades earlier. The Act has since been re-codified, in material part, as 49 U.S.C. §41713. That section declares: "A State, political subdivision of a State, or political authority of two or more States *may not enact or enforce* a law, regulation, or other provision having the force and effect of law related to a price, route or service of an air carrier ..."

Following the effective date of the FAAA Act, the California Legislature, in Stats. 1996 Ch. 1042, enacted the Motor Carrier Safety Improvement Act of 1996 [Motor Carrier Safety Act]. In material part, that Act declares: "§1.5. The Legislature finds that the provisions of the Public Utilities Code that authorize the Public Utilities Commission [and as a matter of law all municipalities] to regulate the rates, routes and services of highway carriers engaged in for-hire transportation of property between points in California *have been preempted* by federal law, (P.L. 105-305)."

Reacting to the entreaties of the various States, the 104th Congress "gave back" some power to the States to regulate certain issues. See 49 U.S.C. Section 14501(c)(2)(C). One of

those is the power of the States to regulate the *price* of non-consensual[3] tow truck operations. "[This section 14501 shall not apply] to the authority of a State [or subdivision thereof] to enact a law, regulation or other provision relating to *the price* of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior consent or authorization of the owner or operator of the vehicle."

    **4. Pertinent Authorities.** Not surprisingly, the courts which have had occasion to construe the foregoing statutory material have come down on all fours in favor of Petitioner's position here.

        **A. United States Supreme Court Authorities.** As noted above, in 1978, Congress enacted the Airline Deregulation Act of 1978. That Act contained, now contained in 49 U.S.C. §41717 the following language: "A State...*may not enact or enforce* a law, regulation or other provision having the force and effect of law related to a *price, route, or service* of an air carrier." The Supreme Court has definitively construed the relevant language "[a] law, regulation, or other provision...related to a price, route, or service" in *Morales v. Trans World Airlines* (1992) 504 U.S. 374. "The issue in this case is whether the Airline Deregulation Act of 1978 ... preempts the States from prohibiting allegedly deceptive airline fare advertisements through enforcement of their general consumer protection laws". The Court then went on the analyze the preemptive effect of the statute:

> "We now turn to the question whether enforcement of the NAAG[4] guidelines on fare advertising through a State's general consumer protection laws is pre-empted by the ADA. **
> 
> Section 1305(a)(1) expressly pre-empts the States from "enacting or enforcing any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates,

---

[3] Non-consensual towing occurs in the familiar circumstances when an illegally parked vehicle is towed while the owner is, e.g., shopping and is not present to authorize the removal of his/her vehicle.

[4] National Association of Attorneys General.

POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER
10306554
3

routes, or services of any air carrier . . . ." For purposes of the present case, the key phrase, obviously, is "relating to." The ordinary meaning of these words is a broad one -- "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with," Black's Law Dictionary 1158 (5th ed. 1979) -- and the words thus express a broad pre-emptive purpose. ***

Petitioner contends that §1305(a)(1) only pre-empts the States from actually prescribing rates, routes, or services. This simply reads the words "relating to" out of the statute. Had the statute been designed to pre-empt state law in such a limited fashion, it would have forbidden the States to 'regulate rates, routes, and services.' Pilot Life, supra, at 50 ("A common-sense view of the word 'regulates' would lead to the conclusion that in order to regulate [a matter], a law . . . must be specifically directed toward [it]"). Moreover, if the pre-emption effected by §1305(a)(1) were such a limited one, no purpose would be served by the very next subsection, which preserves to the States certain proprietary rights over airports. 49 U. S. C. App. §1305(b).

Next, petitioner advances the notion that only state laws specifically addressed to the airline industry are pre-empted, whereas the ADA imposes no constraints on laws of general applicability. Besides creating an utterly irrational loophole (there is little reason why state impairment of the federal scheme should be deemed acceptable so long as it is effected by the particularized application of a general statute), this notion similarly ignores the sweep of the "relating to" language. We have consistently rejected this precise argument in our ERISA cases: '[A] state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect.' Ingersoll-Rand, supra, at 139; see Pilot Life, supra, at 47-48 (common-law tort and contract suits pre-empted); Metropolitan Life, 471 U.S. at 739 (state law requiring health insurance plans to cover certain mental health expenses pre-empted); Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 525, 68 L. Ed. 2d 402, 101 S. Ct. 1895 (1981) (workers' compensation laws pre-empted). ***

POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER
10306554
4

It is hardly surprising that petitioner rests most of his case on such strained readings of §1305(a)(1), rather than contesting whether the NAAG guidelines really 'relate to' fares. They quite obviously do. ***

One cannot avoid the conclusion that these aspects of the guidelines "relate to" airline rates. In its terms, every one of the guidelines enumerated above bears a "reference to" airfares. Shaw, 463 U.S. at 97. And, collectively, the guidelines establish binding requirements as to how tickets may be marketed if they are to be sold at given prices. ***

We hold that the fare advertising provisions of the NAAG guidelines are pre-empted by the ADA, and affirm the judgment of the Court of Appeals insofar as it awarded injunctive and declaratory relief with respect to those provisions... It is so ordered." [Footnotes omitted].

The preemptive language of the FAAA Act, now 49 U.S,C. §14501(c)(1) is identical to the preemptive language just discussed. "The preemption provisions ...displace all state laws that fall within its sphere, even including state laws that are consistent with [their] substantive requirements."*Morales, supra*. Congress has taken away the power of the States to regulate motor carriers with a steam shovel, i.e. it has "displaced all state law that falls within its sphere." If there were no statutory language beyond §14501(c)(1) then the States would be powerless to intrude upon the business of motor carrier transportation at all.

However, Congress has returned some power to the States with a teaspoon. In that connection see §14501(c)(2)(c): "[The preemptive language] shall not restrict the safety regulatory authority of a State with respect to motor *vehicles* [**not the business of motor carriage of goods**], the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle, or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements." Congress also gave back to the States and municipalities the right to impose maximum prices of non-consensual tow truck operations.

POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER
10306554
5

1  "[The preemptive language] does not apply to the authority of a State or a political subdivision of
2  a State to [regulate] ...the price of for-hire motor vehicle transportation by a tow truck, if such
3  transportation is performed without the prior consent or authorization of the owner or operator of
4  the motor vehicle."

The foregoing unavoidably demonstrates the following: Neither States nor municipalities may regulate any aspect of the business of transporting property for hire, *except*: States and municipalities may regulate safety matters related to the motor vehicles themselves, operational limitations based upon size and weight concerns, insurance, and both States and municipalities may regulate the maximum charges for non-consensual tow truck service. That is it. The regulatory scheme imposed upon Plaintiff by the defendants herein is comprehensively unconstitutional.

**B. Ninth Circuit Authorities.** The identical language discussed in *Morales, supra* was addressed by the Ninth Circuit in *Federal Express Corporation v. California Public Utilities Commission* (9th Cir. 1991) 936 F. 2nd 1075. *Federal Express* was decided the year before *Morales* and presaged it to an uncanny degree. In that case, the pertinent datum is that Federal Express operated an all-truck freight operation between Oakland and Los Angeles as an adjunct to its general business of air freight transportation. The California Public Utilities Commission threatened to impose economic regulation (including licensure, record keeping, rate control and the like) on Federal Express' intrastate trucking operations. Federal Express challenged the threatened regulatory behavior of the Commission in federal court. Federal Express lost at the trial level. The Ninth Circuit reversed:

> "As trucks are an essential component of the [air cargo] system, Federal Express operates over 2,600 trucks in California. *\*\*\** Federal Express in an air carrier.... The [Commission] is seking to impose regulations with the effect of law on its services. Q.E.D. -- federal preemption is required by a federal statute that expressly preempts state regulation. *\*\*\** The [Commission's] regulation...enters the forbidden zone Congress has forbidden the States to enter. ...Its regulatory scheme goes far beyond safety on the highways. Most of the regulations challenged here are obviously economic... *\*\*\** Our reading of the plain words of the [relevant statutory

POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER
10306554           6

language] is confirmed by consideration of the purposes of the [acts]. The aim of preemption is to prohibit a state "from enacting any law, establishing any standard determining routes, schedules, or rates, fares or charges in tariffs of, or otherwise promulgating economic regulation for any carrier..." *Id.* at 1076 through 1078.

On remand, Judge Patel of this district held:

"Accordingly, the court hereby modifies the permanent injunction [issued earlier] [and it is declared that] Federal Express is exempt from ...Public Utilities Code [sections] 1061 [relating to *licensure*], and 1062 [relating to all of the relations between shippers and carriers]...." *Federal Express Corporation v. California Public Utilities Commission* (N.D. CA 1993) 1993 U.S. Dist. LEXIS 13830. *** Once it is determined that a regulation is at least partly economic, therefor, *the preemption inquiry is ended.* The field of safety, while susceptible to regulation, is not talismanic. It does not have the power alchemically to purify otherwise tainted provisions. *** A threat of enforcement, therefor, while a prerequisite for injunctive relief, is not necessary to trigger preemption. *The mere existence of improper regulations implicates preemption.*" *Federal Express, supra* at 1993 U.S. Dist. LEXIS 13830 at p. 12.

More recently, the 9th Circuit has addressed the very language involved here in *Tocher v. City of Santa Ana* (2000) 219 Fed. 3rd 1040:

"Tocher operates a towing business in Santa Ana. He and his employees have received citations from the City and have been threatened with legal action because they have failed to comply with the City ordinances regulating towing operations and tow truck drivers. The City has demanded that Tocher and his employees obtain the required City permits before engaging in any further towing operations within the City. Tocher filed this lawsuit in federal district court in an attempt to prevent the City from enforcing its towing ordinances. Tocher alleged that the City's ordinances are preempted by the Federal Aviation Administration Authorization Act of 1995 ("FAAA"), Pub. L. No. 103-305, 108 Stat. 1605 (codified at 49 U.S.C. §14501. ***

For a state or local law to be preempted by section 14501(c), that

law must first be related to the price, route, or service of a motor carrier that transports property. A state or local regulation is related to the price, route, or service of a motor carrier if the regulation has more than an indirect, remote, or tenuous effect on the motor carrier's prices, routes, or services. *See Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1188-89 (9th Cir. 1998).... Thus, the permit scheme erects barriers to entry and these barriers can affect competition for towing services in the City. *See Medonca*, 152 F.3d at 1189 (recognizing that a law would be preempted under section 14501(c)(1) if it 'frustrates the purpose of deregulation by acutely interfering with the forces of competition'). The more applicants that are denied permits, the greater the effect on both the industry and its customers.***

Our reading of section 14501(c)(1) is also closely aligned with the purpose and history behind the preemption statute. Section 14501(c) was adopted by Congress in order to deregulate the motor carrier industry. *See Mayer*, 158 F.3d at 546; *Ace Auto Body & Towing, Ltd. v. City of New York*, 171 F.3d 765, 772 (2d Cir. 1999). In passing the exception for regulation of nonconsensual towing codified in section 14501(c)(2)(C), Congress acknowledged that states and localities should only be permitted to regulate towing services under limited circumstances. *See Mayer*, 158 F.3d at 546. Congress recognized that widespread disparate regulation of the motor carrier industry was inefficient, increased costs, and reduced competition and innovation. *See id.* (quoting H.R. Conf. Rep. 103-677, at 87 (1994)). One House Conference Report stated: "The sheer diversity of these regulatory schemes is a huge problem for national and regional carriers attempting to conduct a standard way of doing business."

Allowing each state and local government to enact diverse laws regulating the towing industry would implicate the same evils that Congress was seeking to cure in enacting section 14501(c).***

In sum, the permit scheme and the provisions governing the conduct of towing operators in [the Santa Ana Municipal Code] and the related provisions of the California Vehicle Code are preempted by the plain language of section 14501(c)(1), unless an exception applies".

There is no room in the constitutional scheme of things for the regulatory scheme in question here. By passing 14501(c), Congress has expressly divided regulatory authority over

POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER
10306554
8

1  the tow truck industry between the states and federal government. To the states, Congress has
2  given the authority to regulate tow truck safety and maximum non-consen[sual] towing prices.
3  To itself, Congress has reserved the right to control routes and services of tow trucks, and has
4  chosen to foster a free market in towing services

5  Let us be clear: "economic regulation" *means* licensure. That issue was squarely
6  presented in the case of *R. Mayer of Atlanta, Inc. v. City of Atlanta, supra*: "The Supremacy
7  Clause... provides that the laws of the United States 'shall be the supreme law of the land; ... any
8  Thing in the Constitution or Laws of any State to the contrary notwithstanding.'... Thus state law
9  that conflicts with federal law is 'without effect.' *** For these reasons, we conclude that [the
10 relevant municipal code sections] are related to the provision of ... towing services because the
11 ordinances limit who is permitted to provide the services and require that individuals and
12 companies satisfy various criteria before they provide the services. [The relevant ordinances]
13 therefor are preempted under section 14501..."

14  **5. Protection of the public.** There will be no ponderable claim by the City in this case
15 that Plaintiff has dangerous vehicles or insufficient insurance. The City in this case simply
16 claims the right to exclude Plaintiff and all others similarly situated from entry into the field.
17 That simply cannot be done. And vague assertions that a licensing scheme is driven by "safety
18 concerns" (and hence avoid preemption) has been given the lie by *Tocher, supra*: "The other
19 provisions in the California Vehicle Code that were enjoined by the district court ...are preempted
20 because they are based on *consumer protection* rather than [vehicle] *safety*, and the safety
21 exception is therefore inapplicable".

22  **6. Conclusion.** Congress has determined that entry into the field of motor carrier
23 transportation shall not be inhibited except on the narrow grounds discussed in this brief and
24 elsewhere. The administrative attempt to deprive Plaintiff of the right to enter the business of
25 tow truck operations cannot stand in the face of the preemptive materials discussed above. The
26 City's regulatory scheme is wholly preempted by 49 U.S.C. §14501(c). A temporary restraining
27 order and an order to show cause re preliminary injunction should issue in the form set out in the
28

POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER
10306554                                                9

proposed order filed concurrently herewith.

DATED: April 6, 2010                SILICON VALLEY LAW GROUP

                                    By: _____
                                        CHRISTOPHER ASHWORTH

                                    Attorney for Plaintiff