United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PP&M TOWING & RECOVERY, INC.,

          Plaintiff,

v.

CITY AND COUNTY OF SAN FRANCISCO, et al.,

          Defendants.

NO. C10-1466 TEH

ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

This matter came before the Court on May 3, 2010, on Plaintiff PP&M Towing & Recovery, Inc.'s motion for a preliminary injunction. After carefully considering the parties' written and oral arguments, the Court now DENIES the motion for the reasons discussed below.

**BACKGROUND**

Plaintiff PP&M Towing & Recovery, Inc. is a California corporation that conducts tow operations as P&S Towing in numerous California cities and counties, including Defendant City and County of San Francisco. The San Francisco municipal code provides that: "No person shall engage in or conduct business as a tow car firm within the City and County of San Francisco without first obtaining a permit from the Chief of Police as hereinafter provided." S.F. Police Code § 3050. The application for a permit requires that certain information be provided, including vehicle information for every tow car that the company will operate, evidence of insurance at or above minimum levels determined by the Chief of Police rules, and a "record of all crimes of which the applicant has been convicted, plead guilty, or plead no contest." *Id.* § 3052. The application also requires that fingerprints be taken, that photographs of the applicant be provided, and that a filing fee be paid. *Id.*

1  § 3053. Grounds for denying a permit application include the following: lack of the required
2  amount of liability insurance; lack of "the requisite tow car equipment or facilities reasonably
3  necessary to operate a tow car business in such a manner as to adequately protect vehicles of
4  the public that are towed and stored from damage or theft"; or a prior conviction by the
5  applicant of any of an enumerated list of crimes, including theft, check fraud, driving under
6  the influence of alcohol or drugs, sex offenses, and other serious offenses such as murder.
7  *Id.* § 3054. Tow companies are also required to allow peace officers to inspect the
8  company's premises and vehicles, as well as to keep business records of vehicles towed for a
9  three-year period. *Id.* §§ 3056, 3059-60.

10  Until recently, PP&M complied with the City's permitting scheme, paying annual fees
11  of approximately $300 for each tow vehicle in its fleet and $198 for each tow vehicle driver.
12  Koehler Decl. ¶ 5(f). However, PP&M's most recent application for a tow permit was
13  denied on March 10, 2010. The company appealed the denial to the San Francisco Board of
14  Appeals, which held a hearing on April 14, 2010. At that hearing, PP&M sought a
15  temporary permit "to last only so long as this litigation persisted. . . . The Board of Appeals
16  did not agree." Ashworth Decl. ¶ 2.

17  During the time that PP&M has been operating in San Francisco without a permit, two
18  of the company's tow vehicles have been impounded, and the City has refused to release
19  either vehicle. According to the supervising sergeant of the San Francisco Police
20  Department's Commercial Vehicle Unit, one PP&M driver "was arrested and cited for
21  operating a tow truck without a permit" on March 30, 2010; "this matter is being prosecuted
22  in traffic court as an infraction." Haggett Decl. ¶ 5. On April 4, 2010, another driver "was
23  arrested while operating a tow truck owned by PP&M." *Id.* ¶ 4. This driver was charged
24  with three violations of the California Penal Code – brandishing a deadly weapon, possession
25  of a switchblade in a motor vehicle, and evading a police officer – and is scheduled to be
26  arraigned on those charges in San Francisco Superior Court on May 18, 2010. *Id.* The City
27  acknowledges that the tow trucks being driven during both incidents were seized and are
28  currently in the San Francisco Police Department's possession. *Id.* ¶¶ 4-5.

2

PP&M's owner asserts that the company's business has dropped by more than 60% since its permit has lapsed, due in part to alleged communications by the San Francisco Police Department to PP&M's commercial customers that the company's operations are illegal. Koehler Decl. ¶ 6(g). "Except for tows originating at or destined to a point outside of the City of San Francisco, [the] company is out of business as of April 15, 2010." *Id.* ¶ 6(l). Twelve of fourteen drivers have been furloughed, and the office staff has been reduced from five to less than 1.5 full-time equivalents. *Id.*

PP&M filed this case on April 7, 2010, seeking injunctive relief barring the City from enforcing the permitting scheme at issue. PP&M made clear in its reply that it seeks to invalidate only those portions of the municipal code related to the permitting scheme:

> This lawsuit has *only* to do with seeking relief from the City's Municipal Code sections which presume to bar entry into the business of conducting a motor carrier business. Assuming that the City's Municipal Code sections relating to 'safety', insurance, size-and-weight restrictions *ad infinitum*, are otherwise consonant with Congress' exemption provisions, the City can enact all of the municipal code sections that it likes.

Reply at 3. The company twice sought a temporary restraining order, which this Court denied. However, the Court accelerated the briefing and hearing schedule on PP&M's motion for a preliminary injunction that is now before the Court.

**LEGAL STANDARD**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008). Even if the plaintiff demonstrates a strong likelihood of success on the merits, a showing that irreparable harm is likely – and not simply possible – is required. *Id.* at 375-76. Similarly, even if a plaintiff can demonstrate likelihood of success on the merits and irreparable harm, the balance of equities or the public interest may require denying injunctive relief. *Id.* at 376.

3

**DISCUSSION**

The Court first considers whether PP&M has demonstrated a likelihood of success on the merits. PP&M contends that the challenged code sections are preempted by the Federal Aviation Administration Authorization Act of 1994, which provides that "a State [or] political subdivision of a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). However, certain statutory exceptions apply to this general preemption. For example, the Act "shall not restrict the safety regulatory authority of a State with respect to motor vehicles" or "the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization." 49 U.S.C. § 14501(c)(2)(A). Likewise, preemption under § 14501(c)(1) "does not apply to the authority of a State or a political subdivision of a State to enact or enforce a law, regulation, or other provision relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior consent or authorization of the owner or operator of the motor vehicle." 49 U.S.C. § 14501(c)(2)(C).

The City does not dispute that the challenged code sections fall within the scope of § 14501(c)(1). Indeed, the Ninth Circuit has held that a city's "comprehensive permit scheme" for tow truck operators is "preempted by the plain language of section 14501(c)(1) unless an exception applies." *Tocher v. City of Santa Ana*, 219 F.3d 1040, 1047-48 (9th Cir. 2000), *abrogated on other grounds by City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 431-32 (2002).

In *Tocher*, the City of Santa Ana argued – like the City does here – that the safety exception under § 14502(c)(2)(A) protected its permitting scheme from preemption. The Ninth Circuit rejected that argument and concluded that the "permit requirements are preempted and are not enforceable." *Id.* at 1050-52.

PP&M would have this Court's analysis stop here, and the tow company would be correct if this portion of *Tocher* remained good law. However, the *Tocher* court adopted "a

4

1 strict construction of section 14501(c)(2)(A)" and concluded that the safety exception "only
2 exempts safety regulations promulgated by state governments, not those enacted by
3 municipalities." *Id.* at 1050-51. This holding has subsequently been overruled by the United
4 States Supreme Court. In *Ours Garage*, the Supreme Court held that "the narrowest possible
5 construction of the exception . . . is surely resistible here." *Ours Garage*, 536 U.S. at 440.
6 Although subsection (c)(2)(A) refers only to the "authority of a State" and not "the authority
7 of a State or a political subdivision of a State," the Court made clear that "§ 14501(c)(2)(A)
8 spares from preemption local as well as state regulation," provided that the regulation is
9 "genuinely responsive to safety concerns." *Id.* at 442. *Tocher*'s contrary conclusion
10 therefore does not control the outcome of this case. *See Miller v. Gammie*, 335 F.3d 889,
11 900 (9th Cir. 2003) (en banc) (holding that if a subsequent decision by a "relevant court of
12 last resort" is "clearly irreconcilable" with a Ninth Circuit decision, then "a three-judge panel
13 of this court and district courts should consider themselves bound by the intervening higher
14 authority and reject the prior opinion of this court as having been effectively overruled").

15 In analyzing whether a challenged law falls within the safety exception, a court should
16 focus on "whether the purpose and intent of the body passing the law at issue, whether state
17 or municipality, was truly safety." *Tillison v. City of San Diego*, 406 F.3d 1126, 1129 (9th
18 Cir. 2005).[1] The legislative's body "expression of intent and purpose is relevant" to the
19 court's inquiry but is "not dispositive." *Id.* at 1130. Even if a regulation "does not explicitly
20 state that it was enacted for safety purposes," it may nonetheless fall within the safety-related
21 exception of § 14501(c)(2)(A). *Tillison v. Gregoire*, 424 F.3d 1093, 1105 (9th Cir. 2005).
22 For example, in a case where the Washington State Legislature did "not expressly state a
23 public safety purpose" for enacting a statute governing non-consensual towing, the Ninth
24 Circuit nonetheless found the safety exception to apply because the statute's language was
25 similar to other regulations that were "all held by courts to be passed for the public's safety.

---

[1] Contrary to PP&M's contention at oral argument that this holding was repudiated by the Ninth Circuit's decision in *American Trucking Associations, Inc. v. City of Los Angeles*, the latter case actually cited *Tillison* to set forth the legal standard governing the safety exception. *Am. Trucking Ass'ns*, 559 F.3d 1046, 1053-54 (9th Cir. 2009) (citing *Tillison*, 406 F.3d at 1129).

5

1  Thus, it is reasonable to conclude that the Washington State Legislature had public safety in
2  mind when it passed [the statute in question]." *Id.* at 1103. However, "if too broad a scope
3  were given to the concept of motor vehicle safety, the exception would swallow the
4  preemption section itself or, at the very least, cut a very wide swath through it." *Am.*
5  *Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1054 (9th Cir. 2009).
6  Consequently, for instance, "even if some kind of general public health concerns are (or may
7  be) involved in a statute or regulation – for example control of cigarette usage – that alone
8  does not bring the regulation within the ambit of the motor vehicle safety exception." *Id.*
9  (citing *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 374-75 (2008)).

10  Here, there is no clear statement of legislative intent that applies to the entire
11  permitting scheme. The legislative history indicates that the Board considered some non-
12  safety-related reasons for passing the ordinances. The Board of Supervisors' Budget
13  Analyst, for example, reported that "the District Attorney's Office receives numerous
14  complaints regarding tow car companies, particularly related to overbilling and unreasonable
15  charges" and advised that the tow ordinances "will regulate towing charges to prevent unfair
16  practices." Dec. 19, 1996 Memo from Budget Analyst to Bd. of Supervisors Health, Pub.
17  Safety & Env't Comm. at 4 (Ex. B to Defs.' Req. for Judicial Notice). Regulations "based
18  on consumer protection rather than safety" are not covered by the safety exception under
19  § 14501(c)(2)(A). *Tocher*, 219 F.3d at 1052. However, the Board of Supervisors also made
20  the following safety-related findings when adopting the challenged ordinances:

> (i) that there are frequent incidents of illegal towing from private property in San Francisco; and
>
> (ii) that there is a significant risk to the safety of residents and visitors when illegal towing from private property occurs at night; and
>
> (iii) that there is a risk to public health and safety when the vehicles of senior citizens and persons with disabilities are illegally towed from private property.

27  S.F. Police Code § 3055.2(a).

6

1    Moreover, the City has presented a declaration from the Commanding Officer of the
2 San Francisco Police Department's Permit Section that discusses the direct relationship
3 between the permitting scheme and safety, and PP&M has offered no evidence in rebuttal.  A
4 court may consider such evidence when determining whether "the challenged sections of the
5 City's vehicle towing ordinance affect *safety concerns*."  *Galactic Towing, Inc. v. City of
6 Miami Beach*, 341 F.3d 1249, 1253 (11th Cir. 2003) (emphasis in original) (holding that
7 affidavits from the Assistant City Manager and Assistant Chief of Police were admissible and
8 relevant to considering whether the safety exception applied).  In this case, the officer's
9 declaration states that the permitting scheme allows the Police Department to "screen
10 company owners and their employees to ensure they have not previously engaged in
11 dangerous and/or criminal conduct that would increase the likelihood that they would create
12 problems," such as towing vehicles illegally, stealing vehicles and selling them on the black
13 market, operating tow trucks in an unsafe manner, or physically or sexually assaulting
14 persons whose cars have been towed or were on a tow company's property – all of which
15 have been observed to occur.  Coggan Decl. ¶¶ 5-6, 8.  The officer also explained that
16 requiring companies to submit information about the vehicles to be used for towing
17 operations allows the Police Department to "determine whether those vehicles are safe for
18 operation" and may allow the Department "to better investigate eyewitness reports of
19 potentially improper and/or criminal activity by tow truck operators, such as unauthorized
20 tows or vehicle thefts."  *Id.* ¶ 11.
21    Although there is no controlling authority in the Ninth Circuit concerning permitting
22 schemes for tow companies, other Circuit courts have upheld regulations similar to the ones
23 challenged here.  For example, the Second Circuit upheld the City of New York's towing
24 laws, which included a licensing requirement for tow companies and operators.  *Ace Auto
25 Body & Towing, Ltd. v. City of New York*, 171 F.3d 765 (2d Cir. 1999).  "To qualify for a
26 license, a towing company must maintain liability insurance, post a surety bond or cash
27 alternative, and demonstrate that its principals have no relevant criminal history."  *Id.* at
28 768-69.  "License requirements for operators include a minimum age of 18 years, possession

7

1    of an appropriate driver's license, and lack of traffic or criminal convictions.  Additional
2    rules govern the mechanical safety of tow trucks, the information displayed on trucks,
3    reporting, and recordkeeping." *Id.* at 769 (citations omitted).  The court held that the
4    licensing requirements "are so directly related to safety or financial responsibility and impose
5    so peripheral and incidental an economic burden that no detailed analysis is necessary to
6    conclude that they fall within the § 14501(c)(2)(A) exemptions." *Id.* at 776.

7        Similarly, the Eleventh Circuit affirmed a district court's ruling that permitting
8    requirements for tow companies "fall under the purview of the § 14501(c)(2)(A)'s public
9    safety exception." *Galactic Towing*, 341 F.3d at 1253.  In that case, the court reviewed
10   ordinances that required a tow company to have a permit, which required submission of an
11   application, including proof of insurance and payment of a fee.  *Id.* at 1251 n.2.  The Fifth
12   Circuit also upheld a local ordinance that barred "persons from receiving a wrecker driver's
13   permit to tow motor vehicles if they have a criminal history including certain specified
14   criminal convictions, documented mental illnesses or unsafe driving records."  *Cole v. City of*
15   *Dallas*, 314 F.3d 730, 732 (5th Cir. 2002).  The court explained: "That the criminal history
16   regulation has, at its core, concern for safety is manifest.  It is difficult to imagine a
17   regulation with a more direct protective nexus or peripheral economic burden."  *Id.* at 735.

18       PP&M did not attempt to distinguish any of the above cases and failed even to
19   acknowledge or refer to these cases in its papers or during oral argument, despite the City's
20   reliance on them in both its opposition brief and at the hearing.  Instead, PP&M relied
21   heavily on *Tocher*, 219 F.3d 1040, for the proposition that a tow vehicle permitting scheme
22   falls outside the scope of the safety exception and is therefore preempted.  However, as
23   explained above, *Tocher* is no longer good law on that issue.

24       PP&M has cited no other cases – and this Court is unaware of any – where a tow
25   vehicle permitting scheme has been held to be outside the safety exception.  In the absence of
26   any such authority, and in light of the unrefuted evidence presented by the City that the
27   challenged ordinances are "genuinely responsive to safety concerns," *Ours Garage*, 536 U.S.
28   at 442, this Court concludes that PP&M has failed to demonstrate a likelihood of success on

the merits of its preemption argument. Thus, PP&M has not satisfied the first requirement for a preliminary injunction, and this Court's analysis need go no further.

**CONCLUSION**

Preliminary injunctive relief would be improper because PP&M has not established that it is likely to succeed on the merits of this case. Accordingly, with good cause appearing, PP&M's motion for a preliminary injunction is hereby DENIED.

The parties are encouraged to meet and confer regarding how this case should proceed in light of this order. Unless otherwise ordered, the parties shall appear for an initial case management conference on **July 26, 2010, at 1:30 PM**, and file a joint case management conference statement on or before **July 19, 2010.**

**IT IS SO ORDERED.**

Dated:   05/05/10

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

9